UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| TANYA HENSLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:16-CV-418-HBG |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 16]. Now before the Court is Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 14 & 15], Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 17 & 18], and Plaintiff's Reply Brief [Doc. 19]. Tanya Hensley ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner"). For the reasons that follow, the Court will **DENY** Plaintiff's motion and **GRANT** the Commissioner's motion.

**I.    PROCEDURAL HISTORY**

On November 8, 2010, Plaintiff filed an application for supplemental security income benefits pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, claiming that she suffers from degenerative bone disease that has rendered her disabled since May 1, 2006, the

---

[1] During the pendency of this case, Nancy A. Berryhill replaced Acting Commissioner Carolyn W. Colvin. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted as the Defendant in this case.

amended onset date. [Tr. 41, 305, 310]. After her application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 132]. A hearing was held on October 26, 2012, resulting in an unfavorable decision by the ALJ.[2] [Tr. 57-83, 102-12]. The Appeals Council remanded the case back to the ALJ [Tr. 118-20], and a second hearing was conducted on January 21, 2015 [Tr. 37-56]. On February 3, 2015, the ALJ found that Plaintiff was not disabled. [Tr. 19-31]. The Appeals Council denied Plaintiff's request for review [Tr. 1-3], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on June 29, 2016, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.   ALJ FINDINGS

The ALJ made the following findings in his February 3, 2015 decision:

> 1. The claimant has not engaged in substantial gainful activity since November 8, 2010, the application date (20 CFR 416.971 *et seq.*).
>
> 2. The claimant has the following medically determinable impairments: remote history of binary stricture and stenting/removal; new onset of congestive hearing failure in 2005, high blood pressure, degenerative disc disease of the thoracic and lumbar spine, bilateral facet hypertrophy, and Anxiety Disorder (20 CFR 416.921 *et seq.*).
>
> 3. The claimant does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does

---

[2] The Court notes that a hearing was conducted on May 4, 2012 [Tr. 85-96], but a decision from that hearing was never issued, apparently due to the ALJ presiding over the hearing having left the agency. [Tr. 19]. The case was subsequently reassigned to a different ALJ who conducted the hearings and decisions discussed herein. [*Id.*].

not have a severe impairment or combination of impairments (20 CFR 416.921 et seq.).

4. The vocational expert described the claimant's past relevant work as a furniture upholsterer (DOT 780.684-118, SVP 5, skilled, medium to heavy work) and a sales associate (DOT 279.357-05, SVP 3, semi-skilled, light to medium work). Alternatively, the claimant is able to perform all of her past relevant work based on the work-related limitations assessed by Dr. Goewey in Exhibit 21F.

5. The claimant has not been under a disability, as defined in the Social Security Act, from November 8, 2010, the date the application was filed (20 CFR 416.920(c)).

[Tr. 21-31].

## III. DISABILITY ELIGIBILITY

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."
42 U.S.C. § 423(d)(1)(A). A claimant will only be considered disabled if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to

3

> last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. § 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. § 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## IV. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## V. ANALYSIS

Plaintiff argues that she suffers from several severe impairments, and that substantial evidence does not support the ALJ's decision to end the sequential evaluation at step two. [Doc. 15 at 10-15]. Plaintiff submits that "multiple objective testing reveal severe impairments," and her symptoms of abnormal straight leg raises, antalgic and stiff gait, and tenderness to spine pressure demonstrate that her impairments have more than a minimal effect on her ability to perform basic work activities. [Docs. 15 at 11-12 & 19 at 2]. Additionally, Plaintiff contends that the ALJ did not properly weigh the opinion evidence of record, further undermining the ALJ's step two determination. [*Id.* at 12-15].

At step two, "the ALJ must find that the claimant has a severe impairment or impairments"

5

to be found disabled.  *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88 (6th Cir. 1985).  To be severe, an impairment or combination of impairments must "significantly limit[] your physical or mental ability to do basic work activities."  20 C.F.R. § 416.920(c).  Step two has been described as "a *de minimis* hurdle" in that "an impairment will be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience."  *Higgs v. Brown*, 880 F.2d 860, 862 (6th Cir. 1988) (citing *Farris*, 773 F.2d at 90).  Importantly, "[t]he mere diagnosis of [an ailment] . . . says nothing about the severity of the condition."  *Id.* at 863.  The claimant must "produce or point to *some* evidence that indicates that an alleged impairment impacts his ability to perform basic work activities."  *Johnson v. Astrue*, No. 3:09-CV-317, 2010 WL 2803579, at *5 (E.D. Tenn. June 30, 2010), *adopted by*, No. 3:09-CV-317, 2010 WL 2836137 (E.D. Tenn. July 15, 2010) (emphasis in the original).

The Court will address Plaintiff's arguments in turn.

### A. Objective Testing of Severe Impairments

Plaintiff contends that the ALJ's step two finding is not supported by substantial evidence because objective testing from 2005 reveal severe impairments related to her heart, including "[chronic obstructive pulmonary disease] in the left heart ventricle [], echocardiogram revealed Left and Right atrial enlargement, Moderate mitral and tricuspid regurgitation, Hypokinesia of the anterior spetal wall, Decreased left ventricular systolic function with ejection fraction 40%-45%, and Pulmonary hypertension with pulmonary systolic pressure of 53 mmHg."  [Doc. 15 at 11 (citing Tr. 446, 461-62)].  While the record supports the existence of these diagnostic findings, the Court finds the record also supports the ALJ's conclusion that none of these conditions, either singular and in combination, constitute a severe impairment.

In the disability determination, the ALJ noted that Plaintiff was diagnosed with new onset

of congestive heart failure in June 2005 after presenting to the emergency room with bilateral leg swelling and shortness of breath. [Tr. 23, 448-49, 457-58, 462]. Moreover, the ALJ discussed the presence and findings of the diagnoses and conditions specifically identified by Plaintiff. [Tr. 23]. The ALJ found, however, that despite a new onset of congestive heart failure, "there is no evidence that [Plaintiff] sought treatment for further problems or symptoms related to congestive heart failure." [Tr. 27-28.]. Indeed, the record does not indicate, and Plaintiff does not cite, any evidence that her conditions received or required continued treatment.

Nor is their evidence regarding the frequency, intensity, and duration of any associated symptoms or limiting effects of Plaintiff's alleged severe impairments. A consultative examination performed in August 2005 by Wayne Page, M.D., detailed no signs of congestive heart failure, and subsequent examinations demonstrated normal cardiac and respiratory findings. [Tr. 28, 546-57, 734, 849]. "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). The Court finds that the medical records cited by Plaintiff from 2005 fail to demonstrate severe or disabling impairments during the relevant period under review.

### B. Symptoms Effecting Performance of Basic Work Activities

Plaintiff also cites to examination findings in which she was noted to have antalgic and stiff gait, tenderness to spine pressure, and abnormal straight leg raises as evidence that her impairments have more than a minimal effect on her ability to perform basic work activities. [Docs. 15 at 11-12 & 19 at 2 (citing Tr. 695, 706-795, 821, 833)]. The ALJ's decision, however, appreciated these findings. [Tr. 23-29].

Specifically, the ALJ discussed in some detail treatment notes from Plaintiff's primary care

7

provider and two pain clinics where Plaintiff received the majority of her care during the relevant period under review. Between November 8, 2010, Plaintiff's application date, and March 7, 2012, the last date of record in which treatment was received, Plaintiff at times exhibited tenderness of the thoracic and lumbar spine, pain on range of motion of the lumbar spine, abnormal straight leg raise testing, pain that radiated to her lower extremities, and a stiff gait. [Tr. 24-25; *see e.g.*, Exhibits 12F & 20F]. While an MRI of Plaintiff's lumbar spine showed no significant abnormalities, x-rays revealed bilateral facet hypertrophy, some loss of lordosis, and some narrowing at the disc spaces at T12-L1, L1-L2, and L4-L5. [Tr. 23, 792]. However, Plaintiff also reported improvement and moderate relief of her symptoms with medication and injections. [Tr. 23-24, 707, 710, 713, 715-16, 794, 808, 821]. "Notably, impairments that are controlled by medication are not disabling." *Burney v. Comm'r of Soc. Sec.*, No. 12-CV-10151, 2013 WL 1289310, at *3 (E.D. Mich. Mar. 28, 2013) (citing *Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 836 (6th Cir. 2005). Additionally, the ALJ noted the lack of objective evidence of stenosis, radiculopathy, or abnormal neurological findings and cited to treatment notes that documented Plaintiff moved and ambulated satisfactorily without the use of an assistive device. [Tr. 28, 728, 796, 850].

In concluding that Plaintiff's impairments have no more than a minimal effect on her ability to perform basic work activities, the ALJ considered several factors which this Court finds are supported by substantial evidence. First, the ALJ observed that Plaintiff "has not received the type of treatment one would expect for a totally disabled individual." [Tr. 28]. Not only does the record lack the opinion from a treating source indicating that Plaintiff suffers from disabling pain, Plaintiff also has not received medical treatment for any physical problem since 2012 despite having medical insurance. [Tr. 28, 42]. Although Plaintiff testified that she did not have transportation

8

and did not like to ask people for a ride [Tr. 42], the ALJ reasonably found that Plaintiff was nonetheless able to attend an agency scheduled consultative examination and at least one physical therapy appointment [Tr. 28]. More importantly, perhaps, is the ALJ's conclusion that the lack of regular or on-going treatment since 2012 calls into question the severity of Plaintiff's alleged symptoms. *See Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. Feb. 3, 2004) ("In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment. A failure to do so may cast doubt on a claimant's assertions of disabling pain.").

Second, the ALJ observed that at the time of the second administrative hearing, Plaintiff was not taking any medications which likewise suggest that her symptoms are not as severe as alleged. [Tr. 28]. Moreover, the ALJ found that when Plaintiff did receive treatment, she was noncompliant with treatment recommendations in that she continued to smoke against medical advice and demonstrated "drug seeking behavior" that resulted in multiple medical providers discharging Plaintiff from their care. [*Id.*]. Treatment records document instances in which Plaintiff failed urinary drug screens, was short on pill counts, and was taking narcotic pain medication from other people, causing her primary care provider as well as at least three pain clinics to discharge Plaintiff from their care. [Tr. 687, 707, 716, 723, 778, 788, 820]. Courts have routinely upheld "[a] claimant's misuse of medications [as] a valid factor in an ALJ's credibility determinations." *Anderson v. Barnhart*, 344 F.3d 809, 815 (8th Cir. 2003); s*ee Massey v. Comm'r Soc. Sec. Admin*, 400 F. App'x 192, 194 (9th Cir. 2010) ("[T]he ALJ's interpretation that [the claimant] is engaged in drug-seeking behavior is a clear and convincing reason for disregarding his testimony"); *Poppa v. Astrue*, 569 F.3d 1167, 1172 (10th Cir. 2009) ("[T]there is sufficient evidence in the record to support the ALJ's determination that [the claimant's] credibility about

9

her pain and limitations was compromised by her drug-seeking behavior."); *Simila v. Astrue*, 573 F.3d 503, 519–20 (7th Cir. 2009) (claimant's drug-seeking behavior was appropriate grounds to discount credibility).

Finally, the ALJ gave great weight to the opinion of Stephen K. Goewey, M.D., who conducted a one-time consultative examination on July 7, 2014, and concluded that Plaintiff did not have any functional limitations. [Tr. 848-56]. An ALJ may rely on the opinion of a state agency medical consultant as to the nature and severity of the claimant's impairment. 20 C.F.R. § 416.927(e)(2)(iii).

In sum, the Court finds the symptoms and examination findings cited by Plaintiff do not outweigh the ALJ's reliance on other substantial evidence in the record in concluding that Plaintiff's impairments do not create more than a minimal effect of her ability to perform basic work activities. *See Longworth v. Comm'r Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005) ("If substantial evidence supports the Commissioner's decision, this Court will defer to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'") (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)).

### C. Opinion Evidence

Finally, Plaintiff argues that the ALJ's step two finding is flawed because the ALJ's decision to give more weight to the opinion of Dr. Goewey than the opinions of consultative examiner Kenton Goh, M.D., and physical therapist Travis Loveday, is not supported by substantial evidence. [Doc. 15 at 12-14].

As noted above, Dr. Goewey performed a consultative examination on July 7, 2014, which took place after the Appeals Council remanded the case back to the ALJ. Among Dr. Goewey's findings, Plaintiff exhibited normal range of motion in all extremities, normal muscle strength,

10

normal gait, station, and tandem walk, negative straight leg raise testing, and only some tenderness of the left lumbar paraspinous and bilateral knee but without swelling, skin changes, or bony deformities. [Tr. 849-50]. Dr. Goewey assessed "alleged degenerative bone disease with limited features of disease present on today's evaluation." [Tr. 850]. He opined that Plaintiff did not have any functional limitations but could perform all ranges of exertional work activities. [Tr. 851-55]. In the disability determination, the ALJ concluded that Dr. Goewey's opinion was well-supported by his examination findings, most of which were benign. [Tr. 29].

Dr. Goh also performed a one-time consultative examination on May 17, 2011, and completed a medical source statement. [Tr. 733-42]. On examination, Plaintiff exhibited moderate tenderness of the thoracic and lumber regions, a limping gait characterized with discomfort and moderate balance difficulties, and positive straight leg raises that produced pain at 25 degrees. [Tr. 735]. Dr. Goh assessed degenerative bone disease and opined that Plaintiff had the following functional limitations: she could sit for eight hours, stand for six hours, and walk for four hours; she could lift and carry up to 20 pounds occasionally; and she could perform postural activities occasionally except she could frequently climb stairs or ramps, but never ladders or scaffolds, and she could not balance or be exposed to unprotected heights. [Tr. 738-79]. The ALJ assigned little weight to Dr. Goh's opinion, observing that the opinion was inconsistent with Dr. Goh's own objective findings which showed minor physical limitations, it was inconsistent with the longitudinal medical evidence of record, and it was inconsistent with Mr. Goewey's more recent examination of Plaintiff. [Tr. 29].

Mr. Loveday performed his examination on October 14, 2014, and also completed a medical source statement. [Tr. 857-61]. Mr. Loveday found that Plaintiff exhibited loss of lumbar spine flexion and extension and suffered from back pain, hip pain, and foot pain, but it was

11

"unknown" whether Plaintiff's impairments, symptoms, and limitation have lasted since 2009, the date Plaintiff reported to Mr. Loveday that she stopped working. [Tr. 857]. The following functional limitations were assessed: Plaintiff could frequently lift up to 10 pounds and occasionally lift up to 15 pounds; she could occasionally carry up to 10 pounds; she would need to lie down one hour at a time due to pain and would need to recline and/or lie down two hours total in an eight-hour workday; she could sit for two hours and walk less than one hour; she would need two to three unscheduled breaks per day; and she would be off-task at work more than 30% of the workday and would either be absent or unable to complete full-time work. [Tr. 858-61]. Mr. Loveday's opinion received no weight from the ALJ due to its inconsistency with the majority of the medical evidence of record, the lack of an on-going treatment relationship, and Mr. Loveday did not have the benefit of reviewing the medical evidence or opinions contained in the record. [*Id.*].

In rejecting the opinions of Dr. Goh and Mr. Loveday, Plaintiff argues that the ALJ failed to identify which evidence was inconsistent with their opinions, and that even the Appeals Council in their order of remand found Dr. Goh's findings consistent with other physical examinations of record. [Doc. 15 at 12-13 (citing Tr. 119)]. The Court is not persuaded. In assigning little weight to Dr. Goh's opinion, the ALJ specifically cited to the more recent opinion of Dr. Goewey, whose examination of Plaintiff largely demonstrated normal and unremarkable findings. In a battle of competing medical opinions, the ALJ alone is tasked with deciding which opinion is entitled to greater weight. *See Isaac v. Sec'y of Health & Human Servs.*, 110 F.3d 64. at *5 (6th Cir. Apr. 3, 1997) (finding that "the ALJ was constrained to choose one or the other" in a case where treating physicians offered differing opinions); *Bandy v. Astrue*, No. 2:10-CV-00119, 2011 WL 6141037, at *7 (M.D. Tenn. Dec. 9, 2011) ("Further, the weight given to the competing opinions of multiple

treating physicians is an administrative finding for which the final authority resides with the Commissioner."). It is also worth noting that at the time the Appeals Council granted review of the ALJ's November 19, 2012 decision, Dr. Goewey's opinion was not in existence.

Furthermore, since the ALJ's November 19, 2012 decision, the lack of medical treatment Plaintiff received for impairments she claims are disabling substantially undermines the existence of a severe impairment. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x, 719, 727 (6th Cir. 2013) (minimal treatment is a valid reason to discount severity); *Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 931 (6th Cir. 2007) ("The ALJ properly considered as relevant the fact that [the claimant's] medical records did not indicate that [claimant] received significant treatment . . . during the relevant time period."). Plaintiff has not received treatment since 2012, and she most recently testified that she is not taking any medication for her ailments aside from Tylenol. [Tr. 42-43]. The ALJ's observations of the same, in addition to Dr. Goewey's opinion and Plaintiff's failure to repeatedly comply with pain management treatment, provides competing evidence that undermines the severity of Plaintiff's impairments and constitutes substantial evidence for concluding that the opinions of Dr. Goh and Mr. Loveday were not entitled to greater weight.

Plaintiff further complains that Dr. Goewey's opinion defies logic because in concluding that Plaintiff did not have any functional limitations, Dr. Goewey checked boxes on the medical source statement that, for example, indicated Plaintiff could lift and carry up to 100 pounds continuously throughout an eight-hour workday. [Doc. 15 at 14 (citing Tr. 851)]. Plaintiff argues that her five foot, 115 pound stature would not allow her to carry or lift 87% of her own body weight continuously throughout an entire workday. [*Id.*]. Plaintiff's contention finds no support in the rules promulgated by the Commissioner. "The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or

combination of impairments, including the impact of any related symptoms." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). Accordingly, "[i]t is incorrect to find that an individual has limitations beyond those caused by his or her medically determinable impairment(s) and any related symptoms." *Id.* A claimant's body habitus, for instance, is not a factor in assessing an individual's RFC. *Id.*; *see Hudson-Kane v. Berryhill*, 247 F. Supp. 3d 908, 915 (M.D. Tenn. 2017) ("Plaintiff's contention that her age, weight, and height preclude a finding that she is capable of medium work is not only unfounded, but also, as noted by Defendant, contrary to Social Security Ruling ("SSR") 96–8p . . . ."). Therefore, Plaintiff's argument is not well-taken.

## VI. CONCLUSION

Based on the foregoing and for the reasons stated herein, the Court will **DENY** Plaintiff's Motion for Summary Judgment [**Doc. 14**] and **GRANT** the Commissioner's Motion for Summary Judgment [**Doc. 17**]. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

_____
United States Magistrate Judge